Good morning. May it please the Court. Christina Hellman for Petitioner Dustin Miller. I would like to reserve two minutes of my time for rebuttal. You may do so. Just watch the clock. Thank you, Your Honor. In this case, a defendant who could afford to retain his own counsel sought to replace his court-appointed counsel and retain the counsel of his choosing. The United States Supreme Court is clear that he has this right and that he should be given a fair opportunity to do so. Well, since we have to look through the ADPA lens here and also you've got to deal with the Wheat case, tell us, you know, why it's a problem relative to those two issues. In addressing the AADPA issue, Your Honor, they're clearly established. Are you asking about whether there's a legal response? Well, in terms of I think you still have to get past Wheat and the issues that you have in terms of that I would say are negative towards your position that I would like you to address are that it's obviously on the day of trial. The lawyer is not actually retained. It's we've put in a call. Correct. And so and the court does have with Wheat, you know, can look at this and balance some of it. So it's not, you know, the timing I would say on the day of trial is not as positive as say if it were 30 days before trial and a lawyer came in and said, I'm prepared, I've been paid, I'm retained, and I just need, you know, as opposed to 30 days, I need 60 days, but I'll be ready. Absolutely, Your Honor. First, the day of trial was his first and only opportunity to raise this issue to the court because his attorney had not met with him until two days before trial despite having been appointed for 66 days from indictment to the day she came to meet with him. Sixty-six days had passed. He had no idea that she was not preparing for a trial and that she was only preparing to plead him guilty. So on his first available opportunity, he called her and said, tomorrow morning please alert the court, I would like a new attorney. This was his chance, and under these circumstances, although it was at the last moment, it was on the day of trial, it's timely under these circumstances. And in two of this court's cases, Moore and Gwin, the court has also considered motions on the day of trial and found them to be timely under the circumstances. So simply because it's on the day of trial, it's not an automatic denial. But we have to not only agree with you if we were deciding this ourselves, we have to find that the previous decision was unreasonable as an application of Supreme Court precedent. So why is the, in other words, if the decision could go either way and you've lost, under ADPA, aren't you stuck? No, Your Honor. Under the ADPA, you do have to, this decision does have to be objectively unreasonable. So why is this objectively unreasonable as an application of Supreme Court precedent? Because the Supreme Court has said that you have a fair opportunity in Powell to get, to exercise the right to counsel. And he was not given a fair opportunity. The court did not inquire into anything into the attorney's, whether the attorney could be prepared, the new attorney. And there was no real on this case. But there is no new attorney. That's the problem. The preparation that the woman that was representing him at the time said, well, someone could be ready in 30 days. That's not the same as someone, I'm retained and I could be ready in 30 days. That's correct. But I think that that's, that is a distinction without a difference. Because the court has never, because he has allowed the fair opportunity, he has identified a person. That person has, on the record, he has made the call. He's working towards it. And the court has not even given him that fair opportunity. Did the person agree to represent him? Not on this record, no, Your Honor. What does the record show, if anything, about why he had been unable to retain counsel earlier, as distinct from didn't decide to? Because he did not know until that day, the day before the trial started, that his attorney was only prepared to plead him guilty. So that was a strategic choice. He wasn't prevented from retaining his own counsel earlier. He was prevented by not knowing that he would need to retain counsel. Do we have any cases that go that far? You're really suggesting that there's a, that the right is even broader than Irede Powell. No, it's that in, the Supreme Court is also clear that it's a case-by-case analysis. And in this case, when an attorney does not meet with their client and does no preparation and shows up two days before trial and says, what we've done is get a plea bargain for you. Here, take it. And the client says, I don't want a plea bargain. I want to go to trial. Now I can't communicate with you. I can't work with you. I'd like a new attorney. Although it is on the day of trial, that is timely under those circumstances. And the trial court did not make in this case a plea bargain. Are you relying on Powell itself or are there any other cases that come close to the fact pattern that you've got in this case? In the Supreme Court? Or this Court has two cases, Moore and Gwinn, and in,  and the court has found that that was, yes, that was timely. I think also it's important to note, though, that this trial court did not make a specific finding in this case that the motion was untimely or that there was a timeliness problem. The court's decision was based on its feeling and its general rule that we should not encourage criminal defendants to get a new attorney at the last minute. There was no analysis done by the court as to whether there would need to be a delay, how long the delay would need to be, anything of that nature. But let me just make sure I understand. Moore and Gwinn were both direct criminal appeals. That's correct. And they did not apply the AEDPA standard and did not consider whether a contrary result was or was not an unreasonable application of Supreme Court precedent. That's correct. However, the test and the inquiry, the three-step inquiry that the court does in cases for the Sixth Amendment right is the same three-step inquiry that is done on direct appeal. So in terms of fact patterns and the inquiry, those are analogous. This Court recently decided a case, Stenson. Now, when you say this Court, you're talking about the Ninth Circuit. The Ninth Circuit. And so that's different, though, than Supreme Court precedent. That's correct. However, this was a case analyzing this issue under the AEDPA. And although in that case the timeliness was not, the timing issues were not the same, the focus in that case looked at how the defendant did have a chance previous to bring the court's attention to the problems and how he failed to do so under those circumstances. In this case, Mr. Miller did not have another opportunity. So that fact coupled with his, excuse me, with the trial court's failure to do any sort of inquiry and any sort of balancing of this fundamental right to pick his own counsel against the calendar, absolutely the court has a right to balance its needs, the calendar needs. The Supreme Court has been very clear about that. But it also needs to have a balancing and a consideration, an inquiry into what is the defendant asking for, my Sixth Amendment right to counsel, and why? Because I have an irreconcilable conflict with my current counsel. Because she hasn't done anything for me. And if there are no other questions, I'll reserve their time. You may reserve your time, Counsel. Thank you, Your Honor. We'll hear from the State. May it please the Court, Carolyn Alexander for Respondent, Sharon Blackletter. One point that I'd like to make, and my comments will be brief unless the Court has questions, but there is no Supreme Court precedent. Wheat, Slappy, Gonzalez are the cases that we need to focus on, not this Court's cases, but for purposes of AEDPA, Supreme Court cases, that would require the trial court to postpone trial on the day set for trial when petitioner couldn't present valid reasons for his appointed counsel's withdrawal and for a continuance, where unlike in Gonzalez, which petitioner very heavily relies, he didn't have a retained counsel. It wasn't a situation like in Gonzalez, where retained counsel is present and saying to the court, I am prepared for trial, I want to defend this individual, I'm representing him, and the trial court wouldn't allow counsel's prohibition admission. What do the cases say about the court's obligation to inquire when informed of an alleged irreconcilable conflict because of a desire to go to trial, which is, of course, a defendant's right? Well, I think the leading case in this Court certainly is Schell that talks about that duty to inquire. Again, Schell is not Supreme Court precedent. It does, I think, inform the analysis under AEDPA, certainly. But there are more factors in this case than just the timeliness issue. Certainly that's an issue. And it's certainly because the right to retain counsel is not absolute, and Wheat says that very clearly. Trial court ---- But the right to work with counsel with whom one does not have an irreconcilable conflict is a recognized right. So did the trial court here do enough to determine whether there was such a conflict? I think it did, Your Honor, and this is the reason why. Certainly I agree with you, Judge Graber, that if this had been a situation where Petitioner had satisfied the court that, in fact, there really was some sort of irreconcilable conflict, if, in fact, trial counsel was not prepared at all, then I think had the trial court relied solely on timeliness and made the ruling that it did, hey, we don't do that. It's set for trial. It's going today. I think there would have been a big problem. But that was not the case. The trial court did inquire into the situation, and I think it did a very nice job and a very adequate, more than adequate job, in making that inquiry. Petitioner frames that inquiry as a reliance solely on the court's own opinion that trial counsel was competent. But that's not really what happened. What the trial court was doing was inquiring into whether trial counsel was prepared or not, and one thing that I did mention in the brief that struck me as I was preparing for argument is that the trial court actually found, as a factual matter, that trial counsel was adequately prepared based on the pretrial motions that she had filed, the prosecutor's statements that trial counsel had been working on this case all along. The prosecutor didn't say trial counsel has only been working on a plea bargain and that's all she's been doing. What about irreconcilable conflict? What's your interpretation of that in this context? Well, I think had Petitioner made a showing that trial counsel truly wasn't prepared for trial and that he'd wanted to proceed to trial, that he had a defense, that he'd given her witnesses, that she didn't interview, I think there would have been, again, a huge problem. But that wasn't the situation. What the trial court did was inquire into what had been going on, what the prosecutor felt. The trial counsel's a little bit hamstringed in this case because she feels she has an ethical obligation to withdraw and not defend herself and simply say, he wants a new attorney, please let me withdraw. So trial court then relies on the prosecutor's statement and assessment of the case and what's been going on for the previous 66 days to form the basis of its ruling. I think that's what the court was allowed to do. In fact, if this Court looks at the facts of Morris v. Slappy, that's exactly what the trial court did there in assessing whether the Petitioner was entitled to a continuance. Is it the State's position that there was an insufficient showing with respect to irreconcilable conflict? No. I think what the record shows, Your Honor, is that the reason for the conflict is Petitioner's unwillingness to communicate with his lawyer. Once he understood from his father that his father was willing to hire his personal friend to represent him, it's unknown whether that attorney would have accepted representation. But once Petitioner knew that, in fact, he could get another lawyer, he simply adamantly refused to talk to his lawyer. That was the basis of the conflict. It wasn't that record. What did the trial court, what findings did the trial court make about whether it was for delay or whether he was being obstinate or what other findings made by the trial court on that issue? Not adequately, I think. I don't, I think it can be inferred that it was for delay. I'm not wedded to that inference, though. And I think it ultimately doesn't matter. Clearly, Petitioner and his father at the very last minute realized, hey, I could go away for a long time, and now we're afraid. And the plea bargain fell through, and now I'm faced with trial, and we don't think she's done enough. But that opinion by Petitioner's father just isn't supported by what was going on. Counsel had met with him. They had talked about a defense. She'd filed a motion to exclude his statements to the police. She was prepared to proceed that day. And that's what the prosecutor told the trial court. And the trial court, I think, in inquiring, was attempting to ferret out, is this truly conflict? Is there truly a conflict here? And the trial court just wasn't convinced that there was. The trial court reviewed the motion that she filed. It was adequate. It was appropriate. Based on the prosecutor's statement, the court just wasn't convinced that there was really a conflict. It was just Petitioner's unwillingness to talk to his lawyer. And, in fact, Petitioner kept refusing to talk to his lawyer, even when the trial court was saying, I find she's prepared. I find we're ready to go. I don't find that there's a conflict. And there was not a middle ground of who says what or whose tests they wanted or whose fault it was or whatever? Correct? Correct, Your Honor. I think there was a first continuance because trial counsel had sought further discovery, specifically the tape of his confessions to the police. And Petitioner construes that as the prosecutor hadn't given discovery. I don't think the record supports that. For whatever reason, defense counsel hadn't gotten that tape and asked for a continuance. And the prosecutor agreed on the condition that the trial be quick set and there not be further delay. So the prosecutor had already made it clear to defense counsel and Petitioner, that's fine, we'll ask for a first continuance, but we're not going to delay this thing. And certainly Petitioner had to know within that time that I've got a limited amount of time, I'm going to trial, if I'm not happy with what's going on, I better say something. And that just never happened. And when the trial court said, did you even give counsel your list of witnesses? Well, no. So I think Petitioner really bears the responsibility of this conflict and the delay in asking for retained counsel and not contacting retained counsel in a timely manner. But again, I think the more crucial issue is not just timeliness, but the fact that his request simply wasn't justified. One more point I'd like to make is that Petitioner also relies very heavily on Powell v. Alabama and the fair opportunity to retain counsel. Powell wasn't about the right to retain counsel. It was about the right to counsel. And in Powell, these defendants had no counsel whatsoever. Here, this is very different. He has appointed counsel. The trial court has found as fact that she's adequately prepared. It's not a situation like Powell. And Petitioner's rule would be absolute that when a criminal defendant asks for retained counsel at the last minute, even though he has appointed counsel who's adequately prepared, the trial court must grant a withdrawal and continuance. And that's simply just not what Slaffee and Wheat and Gonzales require. Roberts. Thank you, counsel. Thank you. Ms. Hellman, you have some reserved time. I have two points. First, although there is no Supreme Court law with these exact facts that does not matter under the AADPA, 2254D also allows for an unreasonable application of law. And the principle from Morris v. Slaffee, when applied to this case, shows that the trial court's decision was an unreasonable application of law. Second point I would like to make is that Respondent, with all due respect, misstates the record on the conflict and misstates the record on whether or not it was Mr. Miller's fault for any kind of conflict. He was not able to talk to his attorney because she did not come to meet with him. He did not refuse to talk to her. She had prepared no defense for him. She does not dispute that on the record, even though he says it at least four separate times. He wanted to go to trial. She wanted him to plead guilty. That was the problem. This Court has had previous cases in which a justifiable breakdown in communication has occurred and an irreconcilable conflict is certainly a justifiable request for delay. The trial court made no specific findings in this case that even any delay was necessary. In fact, it gave him over the weekend to work with an attorney who he couldn't work with without even questioning whether the new attorney could be prepared in time. And again, you can apply Supreme Court principles. So even though he did not have that attorney retained, that is not a distinction that matters in this case. Thank you. Thank you, counsel. The case just argued will be submitted for decision.  Thank you.
judges: O'scannlain, Graber, Callahan